# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF MISSISSIPPI

### DELTA DIVISION

**CRYSTAL SMITH,**
 Plaintiff,

v.

**SOUTHERN BANCORP BANK,**
 Defendant.

Civil Action No.  3:26-CV-38-GHD-JMV

RECEIVED

FEB 20 2026

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

---

# COMPLAINT

(Jury Trial Demanded)

Plaintiff Crystal Smith, proceeding **pro se**, brings this action against Defendant Southern Bancorp Bank and states as follows:

---

## I. PARTIES

1. Plaintiff Crystal Smith is an adult resident of Mississippi.

2. Defendant Southern Bancorp Bank ("Southern") operates banking branches in Mississippi, including the Lambert branch where Plaintiff worked.

---

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. § 2000e et seq.

4. Venue is proper under 28 U.S.C. § 1391 because the events giving rise to this action occurred in Lambert, Mississippi, within the Delta Division.

# III. ADMINISTRATIVE EXHAUSTION

5. Plaintiff timely filed a charge with the **EEOC** and received a **Notice of Right to Sue dated December 31, 2025**.

6. This action is filed within 90 days of receipt.

# IV. FACTUAL BACKGROUND

## Employment History

7. Plaintiff worked as a **Teller** at Southern for over three years.

8. Plaintiff was qualified for her position and performed duties satisfactorily.

9. Prior to the events below, Plaintiff had no history of complaints or discipline.

## Unsafe and Intolerable Working Conditions

10. During **June 2025**, Southern experienced repeated air-conditioning failures at the Lambert branch, causing extreme indoor heat during working hours.

11. On **June 23, 2025**, Plaintiff **worked a full shift in extreme heat** and complained to her supervisor, Stacy, regarding unsafe working conditions.

12. Plaintiff was **not permitted to leave early**.

13. On **June 24, 2025**, Plaintiff informed management she could not safely endure another day in unsafe conditions. Regional supervisor **Jennifer Williams** approved early closure.

## Retaliatory Conduct

14. Stacy **attempted to send only Plaintiff** to assist another branch while sending a coworker home, falsely claiming understaffing.

15. Plaintiff informed Jennifer and was permitted to go home.

16. Stacy later expressed frustration to another employee about Plaintiff not being sent to the other branch, creating additional stress and unsafe work conditions.

### Carbon Monoxide Exposure

17. During the same period, Plaintiff was **informed by a plumber** that the Lambert branch experienced carbon monoxide issues related to vendor repairs.

18. Carbon monoxide is an odorless, colorless, and potentially lethal gas.

19. Plaintiff reasonably feared for her health and safety while working inside the branch under these conditions.

20. Despite notice of this hazard, Defendant failed to:

    - Conduct a thorough investigation of the air quality;

    - Monitor carbon monoxide levels or provide proper ventilation;

    - Evacuate employees or restrict access to affected areas; or

    - Provide assurances or protective measures for employee safety.

21. Plaintiff was **required to continue working in the branch without adequate protection,** which created objectively unsafe and hazardous working conditions.

22. Defendant's inaction directly contributed to Plaintiff's stress, anxiety, and eventual constructive discharge.

## Vendor Hostility and Unsafe Conditions

4

23. On **June 25, 2025**, a vendor performing air-conditioning repairs at the Lambert branch acted aggressively, slamming doors and creating a hostile environment, which was witnessed by a customer.

24. Plaintiff submitted a **written complaint** detailing both the unsafe conditions and the vendor's aggressive conduct.

25. While Southern temporarily removed the vendor and offered Plaintiff a day off on **June 26, 2025**, the company **failed to implement lasting safety measures or ensure Plaintiff's protection.**

26. On **June 27, 2025**, the same vendor returned and **confronted Plaintiff** while she was working alone. Plaintiff **reasonably believed Southern had disclosed her identity and complaint to the vendor**, creating further intimidation.

27. Thereafter, **another vendor Alan repeatedly entered the branch**, referenced Plaintiff by name, and demonstrated knowledge of her prior complaints, **escalating fear, hostility, and exposure to unsafe working conditions.**

28. Southern's failure to respond or intervene **created a persistent, objectively hostile, and unsafe work environment**, directly contributing to Plaintiff's constructive discharge.

## Retaliatory Silence and Failure to Respond

29. After Plaintiff submitted written complaints and follow-up emails seeking assistance, clarification, and protection, Southern **stopped responding** to Plaintiff's communications.

30. Plaintiff repeatedly attempted to follow up with management regarding ongoing safety concerns and vendor interactions, but Southern failed and refused to respond.

31. Southern's silence left Plaintiff without guidance, support, or protection and allowed unsafe and hostile conditions to continue unabated.

32. This failure to respond constituted retaliatory conduct and deliberate indifference to Plaintiff's safety and complaints.

## Constructive Discharge

33. Unsafe and intolerable working conditions persisted, including extreme heat, the risk of carbon monoxide exposure, exposure to aggressive vendors, and management's refusal

5

to respond to Plaintiff's complaints.

34. Southern's conduct left Plaintiff with no reasonable avenue for relief.

35. On **July 18, 2025**, Plaintiff submitted her **resignation** due to these conditions.

36. Plaintiff's **last day** of employment was **August 1, 2025**.

37. Plaintiff was constructively discharged.

# V. COUNT I – RETALIATION (Title VII)

38. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

## Protected Activity

39. Plaintiff engaged in **protected activity under Title VII** when she submitted written complaints to management, including a written communication on **July 3, 2025,** opposing conduct she reasonably believed constituted **race-based disparate treatment and discriminatory working conditions** at the Lambert branch. Plaintiff specifically raised concerns that vendors—primarily white males—were dismissive of her safety complaints, challenged her credibility, and were treated differently than Black vendors.

40. Plaintiff also complained about unsafe working conditions, hostile vendor conduct, and management's failure to intervene.

41. Defendant was aware of Plaintiff's protected activity upon receipt of her written complaints.

## Materially Adverse Actions

42. Following Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse actions, including:

   a. Failing and refusing to respond to Plaintiff's written complaints after she raised race-based concerns;

   b. Failing to investigate or remediate the reported conduct;

   c. Continuing to send the same vendors into Plaintiff's workplace after disclosure of her complaints;

6

    d. Permitting vendors to confront and single out Plaintiff by name;

    e. Exposing Plaintiff to continued unsafe and hostile working conditions; and

    f. Creating and maintaining working conditions so intolerable that a reasonable employee would feel compelled to resign.

43. Defendant's actions and inactions would dissuade a reasonable employee from engaging in protected activity.

## Causal Connection

44. The materially adverse actions described above occurred shortly after Plaintiff engaged in protected activity. The temporal proximity between Plaintiff's complaints and Defendant's refusal to respond, continued exposure to hostile vendors, and escalation of unsafe conditions supports a causal connection.

45. Defendant's conduct reflects **retaliatory motive and deliberate indifference** to Plaintiff's federally protected rights.

## Constructive Discharge

46. As a direct result of Defendant's retaliatory conduct, including management's refusal to respond and failure to protect Plaintiff from ongoing hostile and unsafe conditions, Plaintiff had no reasonable alternative but to resign. Plaintiff's resignation on July 18, 2025 constituted a constructive discharge.

## Violation

47. Defendant's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

# VI. COUNT II – HOSTILE WORK ENVIRONMENT (Title VII)

48. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

## Protected Status

7

49. Plaintiff is a Black female and is a member of a protected class under Title VII.

## Unwelcome Conduct

50. During **June and July 2025**, Plaintiff was subjected to unwelcome conduct in her workplace, including:

   a. Repeated **dismissal of her safety complaints** by vendors and management;

   b. Vendors **confronting Plaintiff** about complaints she made;

   c. Vendors **singling Plaintiff out by name** after learning of her complaints;

   d. A vendor aggressively **slamming doors and creating a hostile atmosphere** in the branch;

   e. A vendor **challenging Plaintiff's credibility** regarding carbon monoxide concerns;

   f. **Subtle accusations** implying dishonesty or wrongdoing; and

   g. Management's **failure to intervene or protect Plaintiff** after receiving written complaints.

51. This conduct was unwelcome and caused Plaintiff fear, anxiety, and distress.

## Race-Based Harassment

52. The hostile treatment occurred in circumstances giving rise to an inference of race-based discrimination, including:

   a. Vendors—primarily white males—**dismissing or minimizing Plaintiff's safety complaints**;

   b. Black vendors being **scrutinized more closely** than white vendors;

   c. White vendors **attempting to report Black vendors** without legitimate cause;

   d. Management **responding differently** to vendors depending on race; and

   e. Plaintiff's complaints about race-based disparate treatment being followed by **silence and inaction**.

53. Plaintiff reasonably perceived the differential treatment and dismissive conduct as being influenced by race.

8

## Severe or Pervasive Conduct

54. The conduct described above **was not isolated**. It occurred repeatedly over **several weeks**, including multiple vendor **interactions, confrontations, and ongoing management inaction**.

55. Plaintiff was left alone in the branch without security, while vendors who had demonstrated hostility were permitted continued access to the premises.

56. The cumulative effect of repeated confrontations, dismissive treatment, management silence, and exposure to unsafe working conditions altered the terms and conditions of Plaintiff's employment.

## Employer Knowledge and Failure to Act

57. Defendant **had actual knowledge of the hostile conduct** through Plaintiff's written complaints and follow-up communications.

58. Despite such notice, Defendant:

   a. Failed to conduct a meaningful investigation;

   b. Failed to implement protective measures;

   c. Continued to send the same vendors into the branch; and

   d. Ceased responding to Plaintiff's written complaints after race-based concerns were raised.

59. Defendant's failure to take prompt and effective remedial action allowed the hostile environment to persist.

## Violation

60. As a direct result of Defendant's conduct, Plaintiff was subjected to a racially hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

# VII. CLAIM FOR RELIEF

9

## COUNT III – BREACH OF CONTRACT

61. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

62. **Binding Policies** – Defendant Southern Bancorp Bank maintains binding written policies in its employee handbook, including:

    a. Harassment Prevention, Complaint Procedure, and Resolution Policy; and

    b. Workplace Violence Policy.

63. **Contractual Promises** – These policies constitute a contract with Plaintiff and include explicit obligations that:

    a. The workplace will be free from harassment, retaliation, intimidation, and violent or disruptive behavior;

    b. Complaints of harassment or unsafe conduct will be taken seriously, investigated promptly, and addressed appropriately;

    c. Employees reporting incidents will be protected from retaliation; and

    d. Appropriate remedial action will be taken, including removal of individuals engaging in harassment or unsafe conduct.

64. **Employee Compliance** – Plaintiff complied fully with these policies by reporting unsafe working conditions, aggressive vendor conduct, and potential carbon monoxide exposure to her supervisors and management.

65. **Defendant's Breach** – Defendant materially breached its contractual obligations by:

    a. Failing to properly investigate Plaintiff's complaints;

    b. Disclosing complaints to vendors who engaged in harassment or intimidation;

    c. Continuing to assign or permit vendors to enter the branch without ensuring Plaintiff's safety;

    d. Failing to take remedial action as required by its own policies; and

    e. Allowing unsafe, intolerable, and hostile working conditions to persist, ultimately forcing Plaintiff to resign.

66. **Causation and Damages** – As a direct and proximate result of Defendant's breach, Plaintiff suffered:

10

    a. Loss of income and employment benefits;

    b. Emotional distress, fear, and anxiety;

    c. Loss of professional stability and future earning capacity; and

    d. Out-of-pocket expenses incurred as a result of Defendant's breach, including costs associated with transportation, and early withdrawal from her 401(k).

67. **Relief Sought** – Plaintiff requests judgment for all compensatory damages allowed under contract law, including consequential damages, as well as any other relief the Court deems just and proper.

# VIII. CLAIM FOR RELIEF

## COUNT IV – NEGLIGENT SUPERVISION / RETENTION

68. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

69. **Duty of Supervision** – Defendant owed a duty to Plaintiff to provide a safe working environment and to supervise vendors entering the Lambert branch.

70. **Breach of Duty** – Defendant knew, or in the exercise of reasonable care should have known, that certain vendors were acting aggressively, intimidating employees, and creating unsafe conditions. Despite repeated complaints from Plaintiff, Defendant failed to:

    a. Properly supervise or monitor these vendors;

    b. Remove or restrict access to vendors posing a risk; and

    c. Implement measures to prevent foreseeable harm.

71. **Causation** – Defendant's failure to supervise and control these vendors directly exposed Plaintiff to continued unsafe and hostile conditions, including confrontations with aggressive vendors and potential carbon monoxide hazards.

72. **Damages** – As a direct and proximate result of Defendant's negligent supervision and retention, Plaintiff suffered:

    a. Emotional distress, fear, and anxiety; and

11

    b. Constructive discharge from her position due to unsafe and intolerable working conditions.

73. **Relief Sought** – Plaintiff seeks compensatory damages for emotional harm, lost wages, and out-of-pocket expenses, as well as any other relief the Court deems just and proper.

# IX. CLAIM FOR RELIEF

## COUNT V – INTENTIONAL / NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

74. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

75. **Extreme and Outrageous Conduct** – Defendant's actions were extreme, outrageous, and beyond the bounds of decency, including:

    a. Repeatedly disregarding Plaintiff's complaints about unsafe working conditions and aggressive vendors;

    b. Continuing to assign or permit vendors who engaged in harassment and intimidation to enter the branch;

    c. Exposing Plaintiff to extreme heat, carbon monoxide hazards, and a persistently unsafe and hostile workplace; and

    d. Failing to respond to or remediate ongoing safety concerns despite repeated notices.

76. **Reckless Indifference** – Defendant acted with reckless indifference to Plaintiff's emotional well-being and health, knowing that its inaction and assignment of unsafe work would cause significant distress.

77. **Causation and Harm** – As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, including:

    a. Anxiety and fear for personal safety;

    b. Humiliation and embarrassment in the workplace;

    c. Loss of enjoyment of life; and

12

    d. Contributing to her constructive discharge and associated financial and professional harm.

78. **Relief Sought** – Plaintiff seeks compensatory damages for emotional distress and any other relief the Court deems just and proper.

---

# X. DAMAGES

79. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

80. As a direct and proximate result of Defendant's unlawful, retaliatory, and negligent conduct, Plaintiff suffered the following damages:

81. **Economic Damages**

    a. Loss of income and employment benefits, including back pay and front pay;

    b. Out-of-pocket expenses incurred as a result of Defendant's conduct, including costs necessary to meet basic living and transportation needs;

    c. Financial losses resulting from Plaintiff's forced early withdrawal from her 401(k) retirement account to pay essential expenses, including monthly car payments, early-withdrawal penalties, tax liabilities, and permanent loss of retirement savings and future growth potential.

    d. Financial losses resulting from Plaintiff being required to obtain a personal loan to meet essential living expenses after losing her income, including principal repayment obligations, interest charges, fees, and related financial consequences.

82. **Non-Economic Damages**

    a. Severe emotional distress, anxiety, fear, and humiliation;

    b. Fear for personal safety due to extreme heat, aggressive vendors, and potential carbon monoxide exposure;

    c. Loss of enjoyment of life, professional stability, and future earning capacity; and

    d. Mental anguish and emotional suffering caused by Defendant's deliberate indifference and failure to respond to repeated complaints.

83. **Punitive Damages**

13

    a. Punitive damages to punish and deter Defendant from future unlawful retaliation, harassment, or unsafe workplace practices.

84. **Statutory Relief**

    a. Plaintiff seeks all damages permitted by law, including compensatory and punitive damages under Title VII, 42 U.S.C. § 1981a, subject to statutory caps **(currently $300,000 for combined compensatory and punitive damages)**, as well as all damages allowed under contract law, including consequential damages.

85. **Defendant's State of Mind**

    a. Defendant's conduct was willful, reckless, and demonstrated deliberate indifference to Plaintiff's federally protected rights.

---

# XI. RELIEF REQUESTED

86. Plaintiff respectfully requests that the Court grant the following relief:

### 87. Judgment

    a. Enter judgment in favor of Plaintiff and against Defendant on all counts.

### 88. Economic Relief

    a. Award back pay and front pay, with interest, to fully compensate Plaintiff for lost income and employment benefits;

    b. Award compensatory damages for out-of-pocket expenses and financial losses incurred as a direct result of Defendant's unlawful conduct;

    c. Award compensatory damages for out-of-pocket expenses and financial losses, including those resulting from Plaintiff's forced withdrawal from her 401(k) retirement account, with early-withdrawal penalties, tax liabilities, and loss of retirement savings and future growth.

    d. Award damages resulting from Plaintiff being required to obtain a personal loan to meet essential living expenses following her constructive discharge, including repayment obligations, accrued interest, fees, and related financial

consequences.

89. **Non-Economic Relief**

   a. Award compensatory damages for emotional distress, anxiety, humiliation, fear for personal safety, and loss of enjoyment of life;

   b. Award damages for loss of professional stability and diminished future earning capacity.

90. **Contractual and Negligence Relief**

   a. Award damages for breach of contract, including consequential damages arising from Defendant's failure to enforce workplace safety and anti-harassment policies;

   b. Award damages for negligent supervision, retention, and failure to protect Plaintiff from unsafe working conditions.

91. **Punitive and Statutory Relief**

   a. Award punitive damages as permitted by law to punish and deter Defendant's willful, reckless, and deliberately indifferent conduct;

   b. Award all damages authorized under Title VII, 42 U.S.C. § 1981a, subject to statutory caps.

92. **Costs and Further Relief**

   a. Award Plaintiff her reasonable costs, fees, and expenses as allowed by law;

   b. Grant such other and further relief as the Court deems just and proper.

# XII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**Respectfully submitted,**

**Crystal Smith**
1246 6th Street, P.O. Box 564
Lambert, MS 38643
662-934-3830 or 662-934-3361
crystalsmith1293@gmail.com

Date: 2/20/26

Signature: